**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NICHOLAS MECHLING and CHRISTOPHER MECHLING, | |
| Plaintiffs, | |
| v. | No. 21-cv-01538 Judge Franklin U. Valderrama |
| THE OPERATOR OF WEBSITE MUAYTHAIFACTORY.COM, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Nicholas Mechling and Christopher Mechling (collectively, Plaintiffs) filed suit against Defendant The Operator of Website Muaythaifactory.com (Defendant), asserting claims stemming from Defendant's trademark counterfeiting of Plaintiffs' boxing equipment. Plaintiffs bring one claim for trademark infringement and counterfeiting under 15 U.S.C. § 1114 and another claim for false designation of origin under 15 U.S.C. § 1125(a). R. 2, Am. Compl.[1][2] The crux of the parties' dispute is whether Defendant can sell products with the trademarks at issue in the United States.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]Plaintiffs filed their original complaint on March 19, 2021 (R. 1, Compl.) and subsequently filed an amended complaint on the same day (see Am. Compl.).

Before the Court is Plaintiffs' Motion for Entry of a Preliminary Injunction (PI Motion). R. 25, Mot. Pre. Inj. For the reasons that follow, the Court grants Plaintiffs' PI Motion.

## Procedural History and Evidence

Less than one week after filing their amended complaint, Plaintiffs filed an *ex parte* motion for entry of a temporary restraining order (TRO), including requests for a temporary injunction, a temporary asset restraint, and expedited discovery. R. 13. The Court granted the motion and entered a TRO, which included the requested relief. R. 24. Before the TRO expired, Plaintiffs filed the pending PI Motion. Mot. Pre. Inj. Defendant then answered the amended complaint (R. 33) and responded to Plaintiffs' PI Motion (R. 39, Resp.).

Plaintiffs attach to their PI Motion a declaration from one of their attorneys, Justin Gaudio. R. 26-1. In their PI Motion, Plaintiffs refer to the arguments made in their memorandum in support of their motion for a TRO and the evidence attached to it. Because the standards are the same for both types of injunctive relief, the Court considers these arguments and evidence for the purposes of resolving the PI Motion. Attached to Plaintiffs' motion for TRO is another declaration from Mr. Gaudio (R. 15) and a declaration from Christopher Mechling, one of the Plaintiffs (R. 16, Mechling Decl.). Defendant attaches to its response a declaration from one of its attorneys, Joshua Schaul. R. 39-1, Schaul Decl. And attached to each of the declarations are various documents which the parties purport to use as evidence to support their arguments.

The Court considers the evidence before it in ruling on the PI Motion. A preliminary injunction "is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," and a district court can consider hearsay at the preliminary injunction stage. *Fed. Trade Comm'n v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 761–62 (N.D. Ill. 2016) (internal citations and quotations omitted). However, documents still must be properly authenticated, and any affidavits still must be based on personal knowledge. *See Dunnet Bay Constr. Co. v. Hannig*, 2010 WL 1326560, at *4, n.1 (C.D. Ill. Mar. 26, 2010). Additionally, the Court notes that Federal Rule of Civil Procedure 65(a) does not require an evidentiary hearing, and a hearing is generally not required if a defendant's response to a motion for preliminary injunction fails to create a genuine issue of material fact. *In re Aimster Copyright Litig.*, 334 F.3d 643, 653–54 (7th Cir. 2003).

## Background

On June 22, 2010, Twins Special Co. Ltd. of Thailand (Twins Special Thailand), Paveenvat Wongprasertkarn (P. Wongprasertkarn), and Plaintiffs established an entity known as Twins Special LLC (TSLLC). Schaul Decl., Exh. D at CM/ECF 14 (TSLLC Letter); R. 47, Reply at 1–2. At that time, Twins Special Thailand owned 50% of TSLLC, P. Wongprasertkarn owned 10% of TSLLC, and Plaintiffs owned 40% of TSLLC. TSLLC Letter. At the same time, Twins Special Thailand assigned:

> all rights, title and interest in and to all trademarks relating to Twins Special and King Professional and all common law rights therein in all countries except existing Thai trademarks, relating to the names Twins Special and King Professional (as those names are use for products made

3

or distributed by the undersigned parties), together with all the good will associated therewith to [TSLLC].

TSLLC Letter; Reply at 2. On February 5, 2013, the owners of TSLLC assigned 100% ownership of TSLLC to Plaintiffs and agreed that they would no longer be "responsible for expenses incurred by [TSLLC] in its business activities, including the cost of registration, maintenance and protection of trademarks." Schaul Decl., Exh. D at CM/ECF 15 (Transfer Letter); Reply at 2. Twins Special Thailand continued to hold its Thai trademarks. *Id.*

TSLLC has granted Plaintiffs a full and exclusive license to "use, enforce[,] and sublicense the intellectual property of [TSLLC], including, but not limited to, the 'Twins Special' and 'King Professional' brands." Mechling Decl. ¶ 2. Pursuant to an agreement between Plaintiffs and TSLLC, Plaintiffs police and enforce the Twin Specials trademarks in the United States. *Id.* In their briefing, Plaintiffs refer to themselves and TSLLC together as Twins Special, but for clarity in this Opinion, the Court refers to Plaintiffs and TSLLC collectively as Twins Special US.

Twins Special US is a manufacturer of boxing gloves and mixed martial arts equipment under, among other brands, the Twins Special and Kings Professional brands. Mechling Decl. ¶ 3. In addition to boxing gloves, it manufactures, sells, and distributes shin guards, training gear, head gear, fight wear, and fighting accessories. *Id.* According to Twins Special US, due to its superior design and craftmanship, along with its reputation, Twins Special US has achieved widespread recognition and fame, making it one of the most well-known manufacturers of fighting equipment. *Id.* ¶ 4. Its products are distributed and sold to customers through its website,

twinsfightgear.com, and through authorized retailers, many of which are in this District. *Id.* ¶¶ 5, 10. Twins Special US also authorizes other websites to sell its products. *Id.* ¶ 5.

Twins Special US owns three trademarks, which are registered with the United States Patent and Trademark Office (USPTO) with the following Registration Numbers: 4,848,713, 4,848,712, and 4,848,711 (collectively, the Twins Trademarks). Mechling Decl. ¶ 6. Twins Special US' products usually include at least one of these trademarks, and single products often include more than one trademark. *Id.* Twins Special US also uses its trademarks to market its products. *Id.* Twins Special US has used the Twins Trademarks exclusively and continuously in the United States and has never abandoned them. *Id.* ¶ 7. According to Twins Special US, the Twins Trademarks are "valid, subsisting, in full force and effect, and one is incontestable pursuant to 15 U.S.C. § 1065." *Id.*

According to Defendant, Twins Special US is part of a worldwide distribution network for Twins Special branded products, all of which come from Twins Special Thailand. Resp. at 1. Defendant claims that it has also been authorized by Twins Special Thailand to distribute such products. *Id.* However, the two documents Defendant attempts to use to support these contentions, a certificate of dealership and a letter, both signed by Narong Wongprasertkan, the CEO of Twins Special Thailand (Schaul Decl., Exhs. B, C),[3] have not been properly authenticated and are

---

[3]The letterhead on each letters states, "Twins Special Co., Ltd." rather Twins Special Co., Ltd. of Thailand." Although circumstantial evidence (e.g., Thai writing on the letters) seems to indicate that the two entities are the same, Defendant does not explain the discrepancy in names.

5

not admissible as evidence.[4] *See Dunnet Bay Constr. Co.*, 2010 WL 1326560, at *4, n.1.

## Standard of Review

A party seeking a preliminary injunction is required to demonstrate: (1) a likelihood of success on the merits, (2) that it has no adequate remedy at law, and (3) that it will suffer irreparable harm if the relief is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002), *as amended* (Oct. 18, 2002). The Seventh Circuit recently clarified how likely success on the merits must be in order to satisfy the standard. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). The Court explained that a "possibility of success is not enough" and "[n]either is a better than negligible chance." *Id.* (internal citations and quotations omitted). But, the moving party "need not show that it definitely will win the case." *Id.* at 763. "A strong showing" of a likelihood of success on the merits thus "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* (internal citations and quotations omitted).

---

[4]This is not to say that the Schaul Declaration is inadmissible hearsay, but rather that an attorney affidavit is not the proper vehicle to authenticate documents signed by Narong Wongprasertkan, as Schaul does not have first-hand knowledge of the information therein and Defendant does not offer an affidavit from Narong Wongprasertkan to introduce the letters. *See Dunnet Bay Constr. Co.*, 2010 WL 1326560, at *4, n.1.; *see also Goodman v. Illinois Dep't of Fin. & Pro. Regul.*, 430 F.3d 432, 439 (7th Cir. 2005). What's more, even if the documents were properly authenticated or Narong Wongprasertkan testified as to the content at an evidentiary hearing, it would not change the analysis, as the information therein is not material—as discussed below, Twins Special Thailand does not have authority to authorize sellers apart from Twins Special US to sell Twins Special branded products within the United States. *See infra* Section I.A.

If the moving party meets this three-element threshold showing, the court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotation and citation omitted). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Labs. v Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992)). The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win[,] the more that balance would need to weigh in its favor." *GEFT Outdoors*, 992 F.3d at 364 (internal quotation and citation omitted). Finally, the court must consider the interests of non-parties in granting or denying the requested relief. *Ty, Inc., v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). It is within this framework that the Court analyzes the PI Motion.

## Analysis

Twins Special US brings two claims under the Lanham Act, one for trademark infringement and counterfeiting and another for false designation of origin. The purpose of the Lanham Act is to:

> regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce

7

against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127. "The Lanham Act's trademark provisions are the primary means of achieving these ends." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). Even though much of the Lanham Act deals with registration, use, and infringement of trademarks, the Act also includes a federal remedy against an entity who used in commerce a false designation of origin in connection with any goods. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28–29 (2003).

For a plaintiff to prevail in a trademark infringement suit, it must show its trademarks are protected under the Lanham Act and that the challenged marks are likely to cause confusion among consumers. *Sullivan v. Bickler*, 360 F. Supp. 3d 778, 786 (N.D. Ill. 2019) (citing *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000)). The same two-factor analysis applies to claims for false designation of origin. *See Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1214 (7th Cir. 1997).

Defendant fails to adequately address, save for one, each of the preliminary injunction elements the Court must consider. Instead, Defendant spends much of its Response advancing defenses to Twins Special US' underlying claims. The Court reviews these defenses first before analyzing the preliminary injunction elements.

## I. Defenses

In its Response, Defendant raises two defenses—failure to state a claim and unclean hands.

### A. Failure to State a Claim

First, even though Defendant answered the amended complaint and did not file a motion to dismiss, Defendant argues that Plaintiffs have failed to state a claim under the Lanham Act. Resp. at 2–4. Defendant presents this dispute as one over the geographical reach of the marks at issue. It argues that because both Defendant's products and Twins Special US' products emanate from a single source, Twins Special Thailand, Defendant has not adulterated any goods, and therefore Twins Special US cannot maintain an action under the Lanham Act. Resp. at 2–3. Defendant also argues that because Twins Special US and Twins Special Thailand are affiliated, the first sale doctrine, not the territoriality doctrine applies, and Defendant may resell Twins Special products in the United States without incurring trademark liability. *Id.* at 3–4. Finally, Defendant argues that Twins Special US is not the exclusive distributor of Twins Special products in the United States, and that Twins Special Thailand has the authority to appoint another distributor such as Defendant for its products in the United States. *Id.* at 4.

The Court resolves the dispute over whether the first sale doctrine or the territoriality doctrine applies, as the resolution of this dispute informs its decision regarding the geographical limit of the Twins Trademarks. Simply put, Defendant misapplies the first sale doctrine, which limits a "trademark owner's right under the

Lanham Act to control distribution *of its own products.*" *Hart v. Amazon, Inc.*, 191 F. Supp. 3d 809, 817 (N.D. Ill. 2016) (internal citations omitted) (emphasis added). The doctrine dictates that:

> with certain well-defined exceptions, the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product. Once a trademark owner sells his product, the buyer may resell the product under the original mark without incurring any trademark liability. Thus, resale by the first purchaser of the original article under the producer's trademark is generally neither trademark infringement nor unfair competition.

*Id.* at 818 (internal citations and quotations omitted). It applies to the producer's products, not the trademarks themselves, as Defendant suggests. *See* Resp. at 3–4. Additionally, Twins Special US is correct that Twins Special US did not make an initial sale of the products sold on Defendant's website to Defendant, again barring applicability of the doctrine. *See* Reply at 8. Finally, contrary to Defendant's assertion, Twins Special US and Twins Special Thailand are not affiliated, and Defendant has presented no evidence showing such an affiliation. *Id.*

Each of the cases Defendant cites is also distinguishable because in each, the holders of the marks were in fact just one company or corporate affiliates. In *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1507 (9th Cir. 1987), the alleged trademark infringer-defendant was importing products manufactured by the plaintiff's Japanese parent company. The Ninth Circuit noted that even though the Japanese parent company assigned trademarks to its U.S. subsidiary, it had the right to market its products in the United States on its own by forcing its subsidiary to consent to such marketing or to return its trademark rights to its Japanese parent. *Id.* at 1510. In

10

*Philip Morris, Inc. v. Allen Distribs, Inc.*, 48 F. Supp. 2d 844, 847 (S.D. Ind. 1999), the alleged trademark infringer-defendants were selling foreign-manufactured products in the United States that they purchased from unknown sources. The plaintiff owned the trademarks at issue in the United States and its affiliate, which distributed and sold foreign-manufactured products, owned the trademarks at issue in all jurisdictions outside the United States. *Id.* Finally, in *Sebastian Int'l Inc. v. Longs Drug Store Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995), the alleged trademark infringer-defendant was selling the plaintiff's own goods. The plaintiff manufactured products and sold them to companies who were members of an organization that the plaintiff created and controlled. The defendant was purchasing the plaintiff's products from one of the organization members and reselling them. *Id.* Affiliation of the trademark holders was not even at issue in the case.

Plaintiffs argue that the doctrine of territoriality should apply to this case, and the Court agrees. *See* Reply at 5–8. This doctrine recognizes that "a trademark has a separate legal existence under each country's laws and is afforded protection by those laws." *Baig v. Coca-Cola Co.*, 2009 WL 1470176, at *6 (N.D. Ill. May 27, 2009) (internal citations and quotations omitted); *see also Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1568–69 (Fed. Cir. 1990) ("The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme."); *TMT N. Am., Inc. v. Magic Touch GmbH*, 1997 WL 136315, at *8 (N.D. Ill. Mar. 18, 1997) (vacated on other grounds) ("Trademarks are 'territorial.' The protection of a trademark in a certain country depends exclusively

11

on the law of that country.") (internal citations and quotations omitted). The Court agrees with Plaintiffs that the Supreme Court's decision regarding territoriality in *A. Bourjois & Co. v. Katzel*, 260 U.S. 689 (1923), applies to this case. Reply at 6–7. In *Katzel*, a foreign manufacturer sold its business and trademarks to the plaintiff for use in the United States and the plaintiff re-registered the trademarks in the United States. *Id.* at 690. The plaintiff sold products bearing the trademarks so that the public associated the trademarks with the plaintiff's goods. The defendant bought goods from the foreign manufacturer, which had labels similar to those of the plaintiff, and imported and sold the goods in the United States. Even though the district court granted a preliminary injunction for trademark infringement, the Second Circuit reversed, but the Supreme Court reversed the Second Circuit, agreeing with the district court's granting of the injunction. *Id.*

As Plaintiffs point out, the Ninth Circuit, in *NEC Elecs.*, 810 F.2d at 1509, identified two rationales for the Supreme Court's holding in *Katzel*. Reply at 6–7. First, "the American company that acquired the mark had made an arm's-length contract with the manufacturer—it had paid "a large sum" for the trademarks and the goodwill associated with them—which was clearly intended to prohibit the manufacturer from selling its goods directly in this country." *NEC Elecs.*, 810 F.2d at 1509. Second, "because the manufacturer had forgone all its rights to its trademark in this country, the American owner of that mark now had complete control over and responsibility for the quality of goods sold under that mark." *Id.*

12

Those same rationales apply almost exactly to this case. On June 22, 2010, Twins Special Thailand and P. Wongprasertkarn assigned to TSLLC "all rights, title and interest in and to all trademarks relating to Twins Special and King Professional and all common law rights therein in all countries" except Thailand, including the "good will associated therewith." TSLLC Letter; Reply at 2. On February 5, 2013, Plaintiffs were assigned 100% ownership of TSLLC and assumed responsibility for the "cost of registration, maintenance and protection of trademarks" in countries other than Thailand in exchange for $500,000.00 and a security interest in a commercial building in California. Transfer Letter; Reply at 2. Additionally, as Plaintiffs highlight, Twins Special US has expended resources to advertise, promote, and market the Twins Trademarks, thereby making them famous throughout the United States. Reply at 7 (citing Mechling Decl. ¶ 8). The doctrine of territoriality applies to this case and Twins Special US' enforcement of the Twins Trademarks remains independent of Twins Special Thailand's use of similar marks in Thailand.

Defendant's remaining arguments also fail. Even if Twins Special US' and Defendant's products emanate from the same source, as Defendant suggests (Resp. at 2), Defendant has not presented any evidence demonstrating that Twins Special US permitted Defendant to sell such products in the United States; although Defendant may not have adulterated any goods (*id.* at 3), this does not change the fact that Twins Special US, not Twins Special Thailand, holds the rights to the Twins Trademarks in the United States. Defendant's claim that Twins Special Thailand is the registrant of Twins Special trademarks (*id.* at 4) is belied by its earlier admission

13

that Plaintiffs own the Twin Trademarks in the United States (*id.* at 3). Finally, Defendant's argument that Plaintiffs have not produced evidence to show that they have exclusive rights to distribute Twins Special products in the United States ignores the effect of trademark registration and protection under the Lanham Act. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015) (citing 15 U.S.C. § 1057(b) (registration of a trademark is prima facie evidence of "the owner's exclusive right to use the registered mark in commerce.")). The two documents Defendant presents allegedly showing that Defendant is an authorized dealer of Twins Special products and that its products are genuine, besides the fact that they are unauthenticated, do not change the effect of Twins Special US' registration of the Twins Trademarks in the United States. *See* Schaul Decl., Exhs. B, C.

### B. Unclean Hands

Second, Defendant raises the defense of unclean hands. Resp. at 5–6. Defendant contends that Twins Special Thailand, not Twins Special US, created the marks at issue. *Id.* at 5. It also argues that when Twins Special US submitted identical design and word marks for the Twins Special brand to the USPTO, it did not have authorization to do so from Twins Special Thailand. *Id.* at 5–6. Yet, Defendant provides no evidence to support its contentions and fails to rebut the presumption that the Twins Trademarks are valid. *See Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 WL 6092636, at *7 (N.D. Ill. Oct. 19, 2016) (holding that registration of trademarks "creates a rebuttable presumption that the marks are

14

valid."). Moreover, as Plaintiffs out in their Reply, the unclean hands defense must "involve fraud, unconscionability or bad faith *toward the party proceeded against*." Reply at 11 (quoting *Maui Jim, Inc. v. Smartbury Guru Enters.*, 386 F. Supp. 3d 926, 957 (N.D. Ill. 2019) (emphasis added)). None of Defendant's contentions implicate any conduct by Twins Special US targeting Defendant. And, Plaintiffs points to the explicit language of the documents Defendant attached to its Response, which show that Twins Special US "was assigned all rights, title and interest in and to the TWINS Trademarks and all common law rights therein in all countries except Thailand." Reply at 12 (citing TSLLC Letter and Transfer Letter). As such, based on the evidence before the Court, Twins Special US had permission to register the Twins Trademarks in the United States. *Cf. TMT N. Am, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 882 (7th Cir. 1997) ("[T]rademark law creates a presumption that, *in the absence of an assignment of trademark rights*, a foreign manufacturer retains all rights to a trademark even after licensing the use of the trademark to an exclusive U.S. distributor.") (emphasis added).

## II. Likelihood of Success on the Merits

Because the elements for Plaintiffs to prevail on both claims are identical, the Court reviews them together. *See Sullivan*, 360 F. Supp. 3d at 786; *Rust Env't & Infrastructure*, 131 F.3d at 1214.

### A. Lanham Act Protection

For the first element, Plaintiffs argue that the registration of the Twins Trademarks with the USPTO constitutes *prima facie* evidence of their validity and

its exclusive right to use the marks. R. 14, TRO Memo. at 5 (citing 15 U.S.C. § 1057(b)). The Court agrees. Pursuant to the Lanham Act, registration of a trademark is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." *B&B Hardware*, 575 U.S. at 142 (citing 15 U.S.C. § 1057(b)). It is undisputed that Twins Special US has three trademarks registered with the USPTO and the Court must view this as *prima facie* evidence of the validity of the Twins Trademarks, Twins Special US' ownership of the trademarks, and its exclusive right to use the marks in commerce. *See* 15 U.S.C. § 1057(b). Plaintiffs also contend that Twins Special US has used the Twins Trademarks exclusively and continuously and that it has not licensed or authorized Defendant to use the Twins Trademarks. TRO Memo. at 5 (citing Mechling Decl. ¶ 7). Last, Plaintiffs posit that the U.S. registrations for the Twin Trademarks are "valid, subsisting, in full force and effect, and one is incontestable pursuant to 15 U.S.C. § 1065." *Id.* (same).

Defendant admits that Twins Special US owns the Twin Trademarks. Resp. at 3. But Defendant argues that Twins Special US committed fraud by claiming it was the exclusive owner of the Twins Trademarks when registering with the USPTO. Resp. at 6. Defendant claims that Twins Special US committed perjury in its USPTO applications by failing to acknowledge that it did not create the Twins Trademarks, the trademarks were already in use by Twins Special Thailand, and that Twins

16

Special US did not have exclusive ownership over the marks. *Id.* at 6–7. Yet, again, Defendant fails to submit evidence to support its contention. As Plaintiffs correctly point out, again relying on the evidence attached to the Response, Defendant puts forth no evidence suggesting that Twins Special US committed fraud when it registered the Twins Trademarks with the USPTO or that it made any false representation to the USPTO. Reply. at 12 (citing TSLLC Letter and Transfer Letter).

Defendant also cites to the Ninth Circuit case of *Grupo Gigante S.A. De C.V. v. Dallo & Co.*, 391 F.3d 1088 (9th Cir. 2004) for the proposition that "the owner of a foreign mark not used in the U.S. can establish priority over a later use of the mark by another party in the U.S. if the owner of the foreign mark demonstrates that its mark is sufficiently famous." Resp. at 7. *Grupo Gigante* is distinguishable because, in that case, a foreign company was the senior user of the trademark in Mexico while the junior domestic user, which was unrelated to the senior user, used the same mark in the United States. Reply. at 12 (citing 391 F.3d 1088). Moreover, neither party had registered the trademark with the USPTO. *Id.* at 12–13 (citing 391 F.3d at 1092). Again, as Plaintiffs highlight, the evidence in the instant case demonstrates that Twins Special Thailand assigned the rights to the Twins Trademarks in the United States to Twins Special US and that Twins Special US registered the Twins Trademarks with the USPTO. Nothing in the record suggests, as Defendant asks the Court to find, that Twins Special US committed an uncurable fraud upon the USPTO or that the underlying trademark registrations are void. *See* Resp. at 7.

17

Plaintiffs have produced exhibits establishing that Twins Special US' trademarks were registered with the USPTO, and, as discussed above, this creates a rebuttable presumption that they are valid. *See Luxottica Grp. S.p.A.*, 2016 WL 6092636, at *7. Defendant does not rebut this presumption with any evidence, and therefore, the Court finds that the trademarks are protected under the Lanham Act.

### B. Likelihood of Confusion

In assessing the likelihood of consumer confusion, courts consider: (1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the plaintiff's marks, (6) any evidence of actual confusion, and (7) the defendant's intent to palm off its goods as those of the plaintiff's. *Promatek Indus.*, 300 F.3d at 812. "None of these factors are dispositive and the proper weight to be given to each will vary in each case." *Id.*

Plaintiffs submit that Defendant's products look similar to Twins Special US' products and use marks that are identical to the Twins Trademarks. TRO Memo. at 6. Additionally, they contend that both Twins Special US and Defendant advertise and sell their products via the internet, thereby targeting consumers looking for genuine Twins Special products. *Id.* Defendant agrees that its products and Twins Special US' products are the same and that the marks on the products are identical. Resp. at 2. In doing so, Defendant concedes that the likelihood of confusion must be high. Defendant presents no substantive argument addressing this element and has

18

effectively waived it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

The Court finds that Plaintiffs have sufficiently established the likelihood of success on the merits of its claims. *See Promatek Indus.*, 30 F.3d at 814.

### III.      Remedy at Law and Irreparable Harm

Plaintiffs must also show that they have no adequate remedy at law and will suffer irreparable harm if the Court does not grant injunctive relief. These two requirements—irreparable harm and no adequate remedy at law—tend to merge. *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Traditionally, the Seventh Circuit applied a presumption that when a plaintiff sufficiently establishes trademark infringement, the plaintiff will suffer irreparable harm and have no adequate remedy at law absent an injunction. *See, e.g.*, *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). This presumption was called into doubt when the Supreme Court rejected the same presumption in patent infringement cases, *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), and the Seventh Circuit subsequently did away with it in copyright cases, *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012). The Seventh Circuit has neither reaffirmed nor overruled prior trademark cases applying the presumption, although post-*eBay* it noted that "irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial)." *Kraft Foods*

19

*Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013). Courts in this District are divided on the issue. *Compare SFG, Inc. v. Musk*, 2019 WL 5085716, at *14 (N.D. Ill. Oct. 10, 2019) (applying the presumption); *Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, 2015 WL 3637740, at *23 n.20 (N.D. Ill. June 11, 2015) (collecting cases that apply the presumption) *with Ill. Tamale Co. v. El-Greg, Inc.*, 2019 WL 4395139, at *19 (N.D. Ill. Sept. 13, 2019) (declining to apply the presumption); *Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 WL 3633987, at *11 (N.D. Ill. June 10, 2015) (same). The Court need not weigh in on the debate, as the specific facts of this case support that Plaintiffs are likely to suffer irreparable harm without an adequate remedy at law from an ongoing Lanham Act violation.

Twins Special US or parties on its behalf have spent "substantial time, money, and other resources in developing, advertising and otherwise promoting the [Twins] Trademarks." Mechling Decl. ¶ 11. This is a "a strong indication that the mark has significant economic value as a source identifier" and that "[a]ny infringement that impedes that identifying function will cause significant harm." *Nat'l Fin. Partners Corp.*, 2015 WL 3633987, at *12. Defendant has also conceded that its products and Twins Special US' products, and the marks on them, are similar. Resp. at 2. Defendant has also sold its products in the United States, the same market where Twins Special US sells its products. Mechling Decl. ¶ 13. This also leads to finding of irreparable harm. *Nat'l Fin. Partners Corp.*, 2015 WL 3633987, at *12. Defendant's sale of goods in the United States also diminishes Twins Special US' ability to control

the quality of the products bearing the trademarks in question, thereby damaging Twins Special US' goodwill. Mechling Decl. ¶¶ 20–21. This also supports a finding of irreparable harm. *See Promatek Indus.*, 30 F.3d at 813 (damage to the plaintiff's goodwill constituted irreparable harm for which the plaintiff had no adequate remedy at law).

Defendant's brief and undeveloped rebuttal does not help Defendant. Defendant maintains that Plaintiffs' harm is not irreparable, as any harm can be compensated via monetary damages. Resp. at 7–8. The Court disagrees. Defendant also ignores recent Seventh Circuit case law and cites to two cases that have nothing to do with the Lanham Act. In *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211 (9th Cir. 1984) at issue was a preliminary injunction enjoining a local government from enforcing a zoning ordinance. In *Sampson v. Murray*, 415 U.S. 61 (1974), the Supreme Court reversed the granting of injunctive relief restraining termination of employment. Defendant offers no evidence or legal authority that Plaintiffs will not suffer irreparable harm absent a preliminary injunction.

Accordingly, the Court finds that Plaintiffs have adequately established that they will suffer irreparable harm with no adequate remedy at law without a preliminary injunction.

## IV. Balancing the Harms and Public Interest

Finally, the Court must balance the harms and consider the effect the injunction will have on the public. *Promatek Indus.*, 300 F.3d at 813. "[T]he more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable

harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Kraft Foods Grp. Brands*, 735 F.3d at 740 (quoting *Abbott Labs.*, 971 F.2d at 12). The Court notes that Defendant fails to discuss this factor in its Response and therefore has waived it. *See Bonte, N.A.*, 624 F.3d at 466. The Court, though, still examines this factor for completeness.

As noted above, Plaintiffs' likelihood of success on the merits, at this stage in the case, is high, necessitating a balance of harms leaning towards Defendant. Yet, Defendant has conceded that both the products and marks at issue are almost exactly the same, Resp. at 2, meaning the likelihood of confusion is high, so the Court can assume Twins Special US' loss of goodwill and control is substantial, *see Kraft*, 755 F.3d at 741. Additionally, Defendant has been profiting from the sale of Twins Special products in the United States, and accordingly, on the basis of monetary damage alone, the potential harm to Plaintiffs outweighs any harm to Defendant. *See Luxottica Grp. S.p.A.*, 2016 WL 6092636, at *8 ("[T]he potential harm to Plaintiffs outweighs any potential harm to Defendant because any harm to Defendant in this matter is purely monetary which would be gained at the expense of Plaintiffs through unauthorized use of Plaintiffs' registered trademarks."). The public interest would similarly be served because the injunction prevents consumer confusion in the marketplace. *Promatek Indus.*, 300 F.3d at 813–14; *see also Luxottica Grp. S.p.A.*, 2016 WL 6092636, at *9 ("Enforcement of the trademark laws prevents consumer confusion and serves the public's interest in not being deceived . . . .") (internal

citations and quotations omitted). Thus, it is in the best interest of the public to grant the PI Motion and enter the preliminary injunction.

## Conclusion

For the foregoing reasons, the Court grants Plaintiffs' Motion for Entry of a Preliminary Injunction [25]. Enter preliminary injunction order.

Dated: September 1, 2021

_____
United States District Judge
Franklin U. Valderrama

23